THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**DIONISIO SANTANA-DÍAZ,**

    **Plaintiff,**

    v.

**METROPOLITAN LIFE INSURANCE COMPANY, et al.,**

    **Defendants.**

**Civil No. 13-1628 (ADC)**

**OPINION AND ORDER**

    Both parties before the Court have moved it for a judgment on the administrative record as to whether the defendant administrator properly denied long-term disability benefits to the plaintiff employee. Applying the agreed-upon deferential standard of review, the Court finds that the defendant acted reasonably. Thus, the Court will grant judgment to the defendant.

    On August 18, 2013, plaintiff Dionisio Santana-Díaz ("Santana") initiated this civil action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1461, by filing a complaint against the administrator of his employee welfare benefit plan ("Plan"), defendant Metropolitan Life Insurance Company ("MetLife").[1] **ECF No. 1**. On

---

[1] Santana also sued Shell Chemical Yabucoa, Inc. ("Shell"), Buckeye Caribbean Terminals, LLC ("Buckeye"), Ikon Group, Inc. ("Ikon"), and a few John Doe co-defendants. On April 23, 2014, the Court terminated Shell as a separate co-defendant on the ground that, years earlier, Shell had become Buckeye. *See* **ECF Nos. 28**, **34**. The Court subsequently entered partial judgments for Ikon and Buckeye, dismissing the actions against them with prejudice. *See* **ECF Nos. 44**, **82**. Neither judgment has been challenged or appealed. Santana has failed to substitute any of the fictitious co-defendants for named parties.

November 26, 2013, Santana amended the complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(A). **ECF No. 4**. In the amended complaint, Santana claims that MetLife improperly denied him long-term disability benefits under the Plan. *Id.*, ¶¶ 97-99.

On January 23, 2015, the Court granted summary judgment to MetLife on the ground that the action was untimely under the three-year limitations period that the Plan had contractually imposed upon Santana's claims. **ECF No. 84**. Santana appealed the judgment of dismissal. **ECF No. 86**. On March 14, 2016, the Court of Appeals reversed the judgment and remanded the case on the grounds that MetLife's failure to provide Santana notice of the Plan's time limit for filing suit in its denial-of-benefits letter, in violation of 29 C.F.R. § 2560.503-1(g)(1)(iv), had rendered the Plan's limitations period inapplicable and that, as a result, Puerto Rico's default fifteen-year statute of limitations for contract claims applied instead, thereby making the action timely. *See Santana-Díaz* v. *Metro. Life Ins. Co.*, 816 F.3d 172 (1st Cir. 2016) (available in the docket as **ECF No. 89**). On April 5, 2016, the Court of Appeals issued its formal mandate. **ECF No. 91**.

On August 22, 2016, Santana moved the Court for judgment on the administrative record. **ECF No. 111**. On November 14, 2016, MetLife opposed the motion and filed a cross-motion for judgment on the administrative record. **ECF No. 131**. On December 28, 2016, Santana opposed the cross-motion. **ECF No. 149**. MetLife has filed the administrative record at **ECF No. 36**, and Santana has not challenged its authenticity. ERISA actions, like the present one, "are generally decided on the administrative record without discovery." *Troiano* v. *Aetna Life Ins. Co.*, 844 F.3d

35, 45 (1st Cir. 2016) (quoting *Morales-Alejandro* v. *Med. Card Sys., Inc.*, 486 F.3d 693, 698 (1st Cir. 2007)).  In ruling on a motion for judgment on the administrative record, the non-movant is "not entitled" to any "inferences in its favor." *Gross* v. *Sun Life Assurance Co.*, 734 F.3d 1, 16-17 (1st Cir. 2013) (citing *Orndorf* v. *Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005)).

The parties agree on the background facts, which the Court has independently confirmed the record supports.  Santana was born in 1956 and, for many years, worked as an accountant and financial analyst for Shell Chemical Yabucoa, Inc. ("Shell").  **ECF Nos. 111** at 11; **131** at 7.  As a Shell employee, Santana participated in the Plan.  **ECF Nos. 111** at 11; **131** at 9.  MetLife administered the Plan, evaluating claims and paying benefits.  **ECF Nos. 111** at 11; **131** at 9, 12.  By a disability-claim form, dated April 7, 2008, Santana applied to the Plan for disability benefits, alleging that he had been unable to work due to disability since November 28, 2007.  **ECF Nos. 111** at 11; **131** at 12.[2]  Santana claimed that he had been suffering from severe depression, among other things, and he submitted a doctor's note substantiating the depression diagnosis.  **ECF Nos. 131** at 13-14; **149-1**, ¶¶ 23 n.4, 26.  Based on that and related proof, MetLife granted

---

[2] Santana inexplicably denies MetLife's proposition that he stated, in his disability-claim form, that he had been disabled and out of work since November 28, 2007.  **ECF No. 149-1**, ¶¶ 21-22.  He insists that MetLife's record citation for the proposition, **ECF No. 36-16** at 94, "does not support th[at] 'fact.'" **ECF No. 149-1**, ¶¶ 21-22.  In a footnote, however, Santana concedes that page 1451 of the administrative record "makes reference to the 'fact' proposed."  *Id*. at 3 nn.2-3.  But **ECF No. 36-16** at 94 is where page 1451 of the administrative record appears in the docket.  And, the document that appears on that page is Santana's handwritten disability-claim form.  Moreover, the form fully supports MetLife's proposition because the proposition simply restates what the form says.  By using scare quotes when referring to the allegations in his own disability-claim form, Santana appears to suggest that the Court should doubt its veracity.  Santana only hurts his credibility by engaging in such tactics.  In any event, the Court declines to accept his invitation to distrust his allegations of disability.

Santana's claim and started to disburse monthly disability benefits to him in November 2008. **ECF Nos. 131** at 19; **149-1**, ¶ 39. By a letter, dated April 5, 2010, MetLife informed Santana that he was eligible for only twenty-four months of benefits based on his mental-disorder (i.e., depression) diagnosis and that if he wanted to continue receiving benefits after November 2010, he needed to prove that his disorder stemmed from schizophrenia, bipolar disorder, dementia, or organic brain disease. **ECF Nos. 111** at 12-13; **131** at 9-10, 19-20; **149-1**, ¶¶ 37, 40. Santana then responded with a letter of his own, dated April 19, 2010, in which he claimed to suffer also from asthma, arthritis, hypertension, high cholesterol, and blood-sugar problems, and in which he vowed to undergo a full medical examination. **ECF Nos. 131** at 19; **149-1**, ¶ 38.

By a letter, dated November 24, 2010, MetLife stated that Santana's disability benefits had ended on November 22, 2010, and that the ailments recounted in Santana's April 19, 2010 letter did not entitle him to further benefits because those ailments did not prevent him from returning to work. **ECF Nos. 111** at 14; **131** at 20; **149-1**, ¶¶ 40-41. MetLife advised Santana that he could administratively appeal its termination of his benefits, but he would have to indicate why he disagreed with the termination and submit medical evidence in support of his claim for further benefits. **ECF Nos. 131** at 20; **149-1**, ¶ 41. By a letter, dated December 14, 2010, Santana appealed the termination. **ECF Nos. 111** at 14; **131** at 20-21; **149-1**, ¶ 42. He submitted supporting medical evidence to MetLife, as requested. **ECF Nos. 111** at 15-17; **131** at 21-23; **149-1**, ¶¶ 42-49. Some of the evidence diagnosed Santana with neuropathy, a degeneration of the nervous system, or with

radiculopathy, an injury to a nerve. **ECF No. 111** at 15-16; **131** at 22; **149-1**, ¶ 46. MetLife referred Santana's evidence to two independent physicians, Drs. Marcellus Cephas and Avrom Simon, who reviewed the evidence and opined on whether it supported Santana's diagnoses. **ECF Nos. 111** at 17; **131** at 23-26; **149-1**, ¶¶ 50-57. Dr. Cephas concluded that the evidence did not show that Santana's depression stemmed from schizophrenia, bipolar disorder, dementia, or organic brain disease. **ECF Nos. 131** at 24; **149-1**, ¶ 52. And, Dr. Simon concluded that the evidence did not show that Santana had any functional or physical limitations due to a diagnosed condition, nor that he even suffered from neuropathy. **ECF Nos. 111** at 29; **131** at 25-26; **149-1**, ¶¶ 54-56.[3]

By letters, dated June 9, 2011, MetLife sent copies of the reports by Drs. Cephas and Simon to Santana's private physicians, asking them for comments and, in the event they disagreed with the reports, for clinical evidence supporting their comments. **ECF Nos. 111** at 16; **131** at 26; **149-1**, ¶ 57. By a letter of the same date, MetLife told Santana that it had contacted his physicians, asking for comments on the reports. **ECF Nos. 131** at 26-27; **149-1**, ¶ 58. Only two of Santana's three physicians responded to MetLife's request. One physician simply stated that the record

---

[3] Santana does not challenge the authenticity of the report by Dr. Simon that is in the record, but he does deny MetLife's claim that the report found that there was no evidence to support his diagnosis of radiculopathy. *See* **ECF No. 149-1**, ¶ 54. In fact, Santana claims the opposite is true, asserting that Dr. Simon's report "is clear" that he "has diabetic neuropathy." *Id.* (citing **ECF No. 36-3** at 24). To support that claim, however, Santana misleadingly cites a part of the report that just repeats his own allegations: "The patient states he suffers from osteoarthritis, diabetic neuropathy, . . . and various psychiatric problems." **ECF No. 36-3** at 24. In reciting his own allegations as proof of the allegation, Santana ignores Dr. Simon's conclusion, made shortly thereafter, that "there is no data in this file that supports any of these diagnoses." *Id.* Once again, Santana only damages his credibility by engaging in these tactics.

Case 3:13-cv-01628-ADC   Document 152   Filed 03/29/17   Page 6 of 14

Civil No. 13-1628 (ADC)                                                                                              Page 6

was sufficiently complete and that she did not have any further comments. **ECF Nos. 131** at 27; **149-1**, ¶ 61. Another physician disagreed with Dr. Simon's opinion that there was no evidence to support a diagnosis of neuropathy, but supplemented the record with only a few progress notes. **ECF Nos. 131** at 27-29; **149-1**, ¶¶ 62, 65.[4] The third and final physician apparently did not comment on the reports, but submitted an order for an MRI and a radiologist's report about the MRI. **ECF Nos. 131** at 29; **149-1**, ¶ 66. MetLife then forwarded all of the responses to Dr. Simon, who reviewed them and concluded that the MRI was normal for a person of Santana's age and that Santana had still failed to submit clinical evidence showing that he had either radiculopathy or any limitations due to neuropathy. **ECF Nos.** 131 at 29-30; **149-1**, ¶¶ 67-71. By a letter, dated August 19, 2011, MetLife denied Santana's administrative appeal and upheld its earlier decision to deny him continuing long-term disability benefits. **ECF Nos. 111** at 19; **131** at 31; **149-1**, ¶ 72. Santana then filed suit in this Court, seeking review of that administrative decision. **ECF No. 4**.

Normally, the Court "must assay the Plan 'in order to determine the standard of judicial review applicable to a claims administrator's denial of benefits.'" *Stephanie C.* v. *Blue Cross Blue Shield of Mass. HMO Blue, Inc.*, 813 F.3d 420, 427 (1st Cir. 2016) (quoting *McDonough* v. *Aetna Life Ins. Co.*, 783 F.3d 374, 379 (1st Cir. 2015)). Here, however, the parties agree that the Court should

---

[4] Although Santana claims to deny the fact that this physician supplemented the record with only progress notes, his explanation of the denial shows that he does not actually deny it. Rather, Santana denies that there was any need to supplement the record with additional evidence. *See* **ECF No. 149-1**, ¶¶ 62, 65. According to Santana, it should have been sufficient that both a "progress note" and an "electrodiagnostic evaluation" had indicated that he had neuropathy. *Id*.

apply the arbitrary and capricious standard because the Plan expressly gave MetLife discretion to interpret its terms and determine eligibility for benefits. *See* **ECF Nos. 111** at 4-5; **131** at 32-33; **149** at 2, 6. Because their agreement appears to construe correctly the unambiguous terms of the Plan, the Court shall apply that highly deferential standard of review. *See* **ECF No. 36-2** at 1 (the Plan's Certificate of Insurance granting MetLife "discretion" to "interpret the terms, conditions, and provisions of the entire [Plan]."); *Stephanie C.*, 813 F.3d at 427 (explaining that the arbitrary and capricious standard applies whenever a Plan gives its administrator such discretion).

Although the arbitrary and capricious standard is "deferential," it "is not entirely without teeth – it requires that a determination by a plan administrator 'must be reasoned and supported by substantial evidence.'" *Ortega-Candelaria* v. *Johnson & Johnson*, 755 F.3d 13, 20 (1st Cir. 2014) (internal quotation marks omitted) (quoting *Colby* v. *Union Sec. Ins. Co. & Mgmt. Co.*, 705 F.3d 58, 62 (1st Cir. 2013)). Evidence is "substantial 'when it is reasonably sufficient to support a conclusion.'" *Id.* (quoting *Cusson* v. *Liberty Life Assurance Co. of Boston*, 592 F.3d 215, 230 (1st Cir. 2010)). "Moreover, so long as substantial evidence supports the plan administrator's decision, the decision is not rendered unreasonable by the mere existence of evidence to the contrary." *Id.* (citing *Cusson*, 592 F.3d at 230). "Put differently, [a court] will uphold [the administrator's] decision to deny disability benefits 'if there is any reasonable basis for it.'" *Medina* v. *Metro. Life Ins. Co.*, 588 F.3d 41, 45 (1st Cir. 2009) (quoting *Wallace* v. *Johnson & Johnson*, 585 F.3d 11, 14-15 (1st Cir. 2009)). Thus, "in the presence of conflicting evidence, it is entirely appropriate for a

reviewing court to uphold the decision of the entity entitled to exercise its discretion." *Ortega-Candelaria*, 755 F.3d at 20-21 (quoting *Medina*, 588 F.3d at 46). The question, in the end, is "not which side we believe is right, but whether the [administrator] had substantial evidentiary grounds for a reasonable decision in its favor." *Id*. at 20 (alteration in original) (quoting *Matías-Correa* v. *Pfizer, Inc.*, 345 F.3d 7, 12 (1st Cir. 2003)). Finally, where, as here, the administrator has a "structural conflict of interest" because it serves "as both payer of benefits and arbiter of claims," the mere "presence" of the conflict "does not alter the standard of review, but rather is 'but one factor among many that a reviewing judge must take into account.'" *Id*. at 26-27 (quoting *Metro. Life Ins. Co.* v. *Glenn*, 554 U.S. 105, 116 (2008)).

The Court finds that substantial evidence supports MetLife's denial of continuing long-term disability benefits to Santana. Santana does not challenge that, under the Plan, he had the burden of establishing that he suffers from a disability that qualifies for such benefits. *See* **ECF No. 36-5** at 29 (Letter from MetLife to Santana, dated April 5, 2010, stating that he had to submit "current objective medical information that would establish that [his] disability" qualified him "for continued benefits" under the Plan). And, he admits that the independent physicians who reviewed his file, including the evidence he had submitted, found that the record contained insufficient clinical findings and data to sustain the conclusion that he suffered from a qualifying disability. **ECF Nos. 149-1**, ¶¶ 52 (admitting that Dr. Cephas concluded that the record did not show that his depression had stemmed from schizophrenia, bipolar disorder, dementia, or

organic brain disease), 55 (admitting that Dr. Simon found insufficient data in the record to support his diagnoses or any functional limitations therefrom); 56 (admitting that Dr. Simon determined there was insufficient evidence to prove that he had physical impairments due to neuropathy). The Court knows that Santana disagrees with the conclusions of the independent physicians, but the basis of his disagreement is thin. At bottom, it reduces to the complaint that the independent physicians did not defer to the diagnoses of his personal doctors.

In his motion, Santana claims that MetLife and, by extension, its independent physicians failed to address his diagnoses of diabetes and polyneuropathy and ignored the evidence in the record showing that he had radiculopathy. *See, e.g.*, **ECF No. 111** at 31-35. However, both claims are false as a factual matter. Dr. Simon, in his report, specifically noted that Santana had been diagnosed with diabetes and polyneuropathy, among other things, but concluded that there was insufficient evidence "to support that [Santana] has any functional limitations from [these] conditions." **ECF No. 36-3** at 25-26. Thus, MetLife, through its independent physicians, did address those diagnoses. Moreover, in his motion, Santana fails to develop any argument that explains why the above finding was unreasonable and, as a result, he has waived it for "lack of development." *Holloway* v. *United States*, 845 F.3d 487, 491 n.4 (1st Cir. 2017).

As to the evidence allegedly showing that he suffers from radiculopathy, Santana points primarily to three items: 1) a 2010 electromyogram ("EMG"), 2) a February 25, 2011 progress note, and 3) a July 13, 2011 MRI. Although Santana refers to the EMG repeatedly in his motion,

he does not identify whether or where the EMG appears in the record. Instead, whenever he invokes the EMG, he directs the Court to Dr. Cephas's report, at **ECF No. 36-3** at 48, where the independent physician writes, without any explanation, "4. Jesus Maldonado, MD: 8/2/2010 – Tenosinovitis; 11/15/2010 – EMG Nerve Study; Peripheral Motor Sensory Polyneuropathy; Right Femoral Nerve Lesion." *See* **ECF Nos. 111** at 24, 31, 33. Santana may believe that such a cryptic notation constitutes "objective evidence" and "clinical data" that he suffers from radiculopathy or polyneuropathy. But he is mistaken because it is not clear, from the face of that record, what the noted items either indicate or prove, nor even what Dr. Cephas meant by the notation. In any event, Dr. Simon, the other independent physician, wrote in his report that he had reviewed the "electrodiagnostic studies from 8/2/10" and the "EMG/NCV testing from 11/15/10." **ECF No. 36-3** at 25. Now, even if those tests established that Santana suffered from polyneuropathy or another diagnosed condition, it would not detract from Dr. Simon's finding that both tests, as well as the other evidence Santana had submitted, failed to prove that any of those conditions has caused him to experience "functional limitations." *Id*. at 25. And, if Santana does not suffer from such limitations, he is not "disabled" under the Plan. *See* **ECF Nos. 111** at 12; **131** at 9.

Similarly, Santana cannot complain that MetLife, or its independent physicians, ignored the February 25, 2011 progress note or the July 13, 2011 MRI. The handwritten progress note appears in the record at **ECF No. 36-2** at 84. As Dr. Simon observed in his follow-up report, the note is plainly "illegible." *Id*. at 77. Thus, Dr. Simon was right in concluding that "no objective

data" can be gleaned from it. *Id.*; *cf.* **ECF No. 149-1**, ¶¶ 24-25.  Although Santana tries to fix the problem by submitting what purports to be (but does not look like) a recent transcription of the note, **ECF No. 111-1**, the Court agrees with MetLife that the transcription is not part of the administrative record and, thus, may not be used to contest the decision below. **ECF No. 131** at 37.  This appears to be a principle with which Santana agrees.  As he acknowledges in his motion, since "the final administrative decision acts as a temporal cut off point," ERISA plaintiffs "may not come to a court and ask it to consider post-denial medical evidence in an effort to reopen the administrative decision." **ECF No. 111** at 20 (quoting *Orndorf*, 404 F.3d at 519).  And, since the transcription was not before MetLife at the time of the denial, it is post-denial evidence.  By contrast, a legible copy of the MRI was presented to Dr. Simon, who then noted that it simply showed "discogenic and degenerative disease" in Santana's lumbar spine, which, Dr. Simon further noted, "is a completely expected and ordinary finding in a 55 year old man." **ECF No. 36-2** at 77.  Accordingly, the MRI was not ignored, but considered and weighed, by MetLife.

The Court agrees with MetLife, *see* **ECF No. 131** at 45-49, that, under circuit precedent, these record-based "findings by [the] independent medical examiner[s] g[i]ve MetLife the requisite 'substantial evidentiary grounds for a reasonable decision in its favor.'" *Medina*, 588 F.3d at 46 (quoting *Denmark* v. *Liberty Life Assurance Co. of Bos.*, 566 F.3d 1, 6 (1st Cir. 1999)); *see also Gannon* v. *Metro. Life Ins. Co.*, 360 F.3d 211, 216 (1st Cir. 2004) (affirming that a court may uphold an administrator's "termination of disability benefits [where] the supporting medical

evidence consist[s] solely of an independent medical consultant's review of the claimant's file, which include[s] records from the claimant's physicians.") (citing *Matías-Correa*, 345 F.3d at 9-10, 12). That Drs. Simon and Cephas "did not physically examine [Santana] does not decrease the credibility of [their] medical opinion" that the record fails to support Santana's entitlement to further benefits, which, in turn, "constitutes medical evidence in support of MetLife's decision to terminate [Santana's] benefits." *Id*. at 214. Although the record shows that Santana's personal doctors had diagnosed him with several disorders, "ERISA does not require plan administrators or reviewing courts to accord special deference to the opinions of treating physicians." *Id*. at 215 (citing *Black & Decker Disability Plan* v. *Nord*, 538 U.S. 822 (2003)). Under the terms of the Plan, it was within MetLife's discretion to weigh that competing evidence to determine whether Santana was 'disabled' and hence whether he was entitled to continuing benefits. "And in the presence of conflicting evidence, it is entirely appropriate for [the Court] to uphold the decision of the entity entitled to exercise its discretion." *Id*. at 216. Accordingly, the Court hereby finds that MetLife acted reasonably and within its discretion, in light of the evidence before it, when it denied long-term disability benefits to Santana and then upheld that decision on appeal.

Santana's arguments to the contrary are unavailing. He complains that MetLife operated under a conflict of interest in administering the Plan – because it both evaluated claims and paid out benefits under the Plan – but then neglects to argue how or even whether the conflict affected MetLife's decisions. *See* **ECF No. 111** at 21. For example, although it seems clear that MetLife's

final benefits determination was based on the views of its independent physicians, Santana does not challenge the independence of those physicians. As a result, he has failed to establish why the conflict should be granted any "extra weight in the court's analysis." *Ortega-Candelaria*, 755 F.3d at 27 (quoting *Cusson*, 592 F.3d at 224); *see also Holloway*, 845 F.3d at 491 n.4. Santana also complains, more generally, that MetLife violated his procedural rights by, among other things, expediting the process at certain points, delaying it at others, and obfuscating its rules at yet others. **ECF No. 111** at 41-46. However, as Santana correctly admits, he cannot succeed on those procedural claims unless he can show that he has been prejudiced. *Id*. at 44 (citing *DiGregorio* v. *Hartford Comprehensive Emp. Benefit Serv. Co.*, 423 F.3d 6, 16 (1st Cir. 2005)). And, he has failed to show prejudice. Instead, he simply assumes that he is entitled to long-term disability benefits, and then asserts that any delay in his receipt of those benefits and the costs he has incurred in appealing the denial below constitute prejudice. *Id*. at 44-46. But since, as shown above, Santana has failed to establish that the denial below was arbitrary or capricious, his bootstrapping claims of prejudice necessarily fail. Moreover, he has failed to establish any other kind of prejudice.

Finally, Santana complains that MetLife did not define the kinds of "clinical" evidence it needed him and his physicians to produce to support his diagnoses. *Id*. at 22. However, he fails to explain how the term "clinical" is ambiguous, and the Court does not see why it would be. *See id*. Besides, the reports by MetLife's independent physicians indicated the types of clinical evidence they needed to see. For example, Dr. Simon's report begins by recounting the evidence

in the record supporting Santana's diagnoses, which appears to have been largely comprised of doctors' notes and reports about images and exams that may not have been part of the record themselves.  *See* **ECF No. 36-3** at 23-24.  When asked about the "specific, clinical findings/data" that support Santana's claims, Dr. Simon states there are none.  *Id*. at 25.  When asked why the record lacks such evidence, he adds that, though there are documents asserting that Santana has certain diagnoses, there is "no corroborating information to support th[e] diagnos[e]s (i.e. there are no MRI, CT or plain X-ray films . . . to support th[e] assertion.)."  *Id*.  Moreover, there were no recent medical reports establishing that Santana had "any functional limitations due to [a diagnosed condition]."  *Id*.  Thus, it is clear what MetLife meant by "clinical" evidence.  In any event, Santana fails to explain how he was prejudiced by any ambiguity in that term, nor does he allege that he even misinterpreted the term due to an ambiguity.  *See* **ECF No. 111** at 22.

In sum, the Court finds that MetLife acted reasonably and within its discretion under the Plan when it denied Santana long-term disability benefits and upheld that decision following his administrative appeal.  Accordingly, the Court hereby **GRANTS** MetLife's cross-motion for judgment on the administrative record, **ECF No. 131**, and **DENIES** Santana's rival motion for the same, **ECF No. 111**.  The Clerk shall enter judgment in favor of MetLife and close the case.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 29th day of March, 2017.

                                                            **S/AIDA M. DELGADO-COLÓN**
                                                            **Chief United States District Judge**